M. M. BRIEN *v.* H. W. BUTTORFF and others.

October Term, 1876.

ELECTION OF RIGHTS.—The complainant, who, as assignee of one of the defendants, was the owner of certain notes entitled to the benefit of a mechanic's lien on realty, in common with the claims of the other defendants, filed this bill to hold the defendants personally liable to him for his demands, and to have the same paid first out of the proceeds of the sale of the realty, but was, under the peculiar circumstances developed by the record, required to elect to ratify the contract of his assignor with the co-defendants touching the assigned debt, or to repudiate the contract, and take his strict legal rights, under the penalty, in case of refusal, of having his bill dismissed with costs.

*M. M. Brien,* for self.
*Ed. Baxter,* for defendants.

THE CHANCELLOR:—The facts of this case, about which there is no dispute, are these: The firms of Haynie & Chilton, Treppard & Co., Grewar & Albertson, and H. W. Buttorff, as mechanics, under separate contracts, furnished materials and performed work in the erection, in 1867, of a costly building in Nashville for one M. A. Parrish, and thereby severally acquired liens on the house, and the lot on which it was erected, for the amount of their accounts. The defendant Buttorff employed the complainant, as his solicitor, to enforce his lien on the property, and early in 1868 he filed a bill in Buttorff's name for this purpose, and on December 21, 1869, recovered a decree for $2,580.05, and for a sale of the realty, in satisfaction thereof, for cash. Parrish appealed from this decree to the Supreme Court, where the same was affirmed. In the meantime, on May 13, 1868, Buttorff bought from the complainant a lot of land, and, in part payment, assigned to him the claims on which the bill in his name to enforce his mechanic's lien was filed, described in the written agreement of transfer as "three notes now in suit in the Chancery Court at Nashville," and agreed, by the same instrument, to prosecute

the suit for complainant's use, and "also to pay the counsel fees for filing the bill and prosecuting said suit in said Chancery Court."

The other defendants, instead of coming into Buttorff's case by petition, or joining in one suit, under the Code, sec. 3544, filed separate bills to enforce their respective liens, and each obtained a like decree, from which an appeal was taken to the Supreme Court. In the Supreme Court these cases were consolidated, and a decree rendered, by consent of parties, for the claim of each complainant, and for a sale of the property, free from the equity of redemption, on a credit of six months. Neither complainant nor Buttorff was a party to the agreement, or the suits. The complainants in these suits had, however, previously, and after the affirmation by the Supreme Court of the decree in the Buttorff case, united in a bill against the said Buttorff to enjoin him from selling the property for cash, exclusively for his own debt, and to have the sale made on time, free from the equity of redemption, and the proceeds "divided among all," to use the words of the bill now before us. Such proceedings were had in this cause that a decree was rendered in accordance with the prayer of the bill; and Buttorff appealed to the Supreme Court, where the decree was affirmed on the same day the decree was rendered in the consolidated causes, and, "by consent of parties," the costs of the cause were directed to be paid out of the proceeds of the sale in the consolidated causes. Afterwards, when the property was about to be sold under the latter decree, and on March 14, 1874, the defendants entered into an agreement, reciting their several recoveries, authorizing James Haynie, one of the defendants, to bid off the real estate for them ; and further agreeing, "in the event it, or any part of it, is purchased at said sale by him," to pay for and own the same in proportion to their debts, and to pay all expenses in the like proportion. Haynie did, at the clerk's office, bid off the property, under this agreement, at the

amount of all their debts and a small addition to cover costs. The clerk reported the sale, embodying the agreement of the defendants in his report; and on March 4, 1875, this report was confirmed by the Supreme Court. The decree of confirmation recited the agreement of the parties, and vested the title to the land in the defendants in the proportion of their several debts as recited.

At the time the defendants entered into the written agreement to purchase the property in common, there was a further understanding or agreement between them, not embodied in the writing, that the property should be resold at private sale as soon as possible, partly for cash and partly on time, and that the first moneys received should be paid to Buttorff to the extent of his interest in the joint purchase. This preference was conceded to Buttorff because he stated that complainant, Brien, was pressing him for the amount of the debt which had been transferred to him. The defendant Buttorff says he was advised by complainant that he was liable to him for the debt thus assigned, and acted accordingly; and the other defendants concede they knew of the assignment. The defendants deny, however, any agreement to pay the debt, and admit only an agreement to give Buttorff the benefit of the first moneys received on a resale of the property to the extent of his interest. The complainant says, in his deposition, that he was in the Supreme Court when the decree of confirmation was read, and would have objected, but was assured by the counsel of defendants that this money (meaning Buttorff's decree) would be paid to him; and that after the decree was entered, Buttorff, if not all the defendants, assured him he was to be paid. Afterwards, he adds, Buttorff told him, if any thing was lost in the sale, and the property did not sell for enough to pay all, the deficiency in his claim he would pay himself.

This bill was filed on September 24, 1875, and prays a personal decree against all of the defendants for the amount,

of the Buttorff debt, and that the land bought as aforesaid be subjected to the satisfaction thereof, and of his counsel-fees under Buttorff's agreement of transfer.  There is a charge of fraudulent combination by the defendants to deprive complainant of his lien, which is denied by the answer and not sustained by any proof, and may be laid out of view.  It is perfectly clear that the defendants entered into the agreement under which the land was bought in good faith, merely to secure equality of division in the proceeds of sale, neither one of them being willing to become the purchaser at any thing like the value of the property, with the certainty of having to pay the excess of bid over his claim to the others.  Under these circumstances, the property might, without some such agreement, have been sacrificed, to the loss of all of them.  The contract was unexceptionable, but cannot affect the complainant's rights, except so far as he may have consented thereto.

The complainant seeks to charge the defendants other than Buttorff personally with the amount of his claim, upon two grounds : first, that they had agreed with Buttorff by parol, at the time of the written agreement of March 14, 1874, that his debt, owned by the complainant, should be first paid ; secondly, that they promised, after the confirmation of sale, to pay it.  Both of these charges are expressly denied by the defendants in their sworn answer ; and there is no proof whatever on the first point, and, on the second, only the testimony of the complainant, which, if it were direct and positive, would not be sufficient to overturn the answer.  But the complainant does not prove a direct promise.  On the contrary, he states that those of them whom he saw personally told him he was to have the Buttorff debt, but if any thing was lost, — meaning in the anticipated resale, — Buttorff was to lose his portion.  It is obvious that these defendants merely stated the terms of the agreement with Buttorff, and it was an inference of the complainant, not justified by what actually passed, that there was an

assurance that he was to be paid. If it had been otherwise, and the defendants had directly promised the complainant to pay him the money, it would have been a promise to pay the debt of another, and not binding, under the Statute of Frauds, because not in writing.

The complainant seeks to charge Buttorff personally upon three grounds:

1. Because " bound to complainant for the same. "

2. Because he promised to pay it after the decree confirming the sale was entered.

3. Because he took the responsibility of controlling the decree, and entering into the agreement of March 14, 1874, with the other defendants.

The first ground seems to be based altogether upon the original contract, by which Buttorff assigned his claim to the complainant, for there is no other evidence as to his liability by contract. The instrument of assignment, however, contains no such obligation. It is simply an assignment of the notes evidencing the claim, and an agreement to prosecute the suit in his name for the benefit of complainant, and to pay certain fees. There is nothing in this record to show that Buttorff intended to make himself personally liable for these notes in any contingency, or that he has made himself, or been made, liable in law therefor. He seems to have acted as if he were liable, but this he explains in his answer by saying that complainant told him he was liable ; and, not being himself a lawyer, as complainant was and is, he supposed he was. A mistake as to the extent of his liability, whether occasioned by any thing said to him by the complainant or taken up of his own accord, would not, of course, render him liable, if in fact he was under no such legal obligation. Where an indorser has been released by a failure to make demand and give notice, even a positive promise to pay, with knowledge of the facts, will not bind him, if made under a misapprehension as to the operation of the law upon the facts ; and the burden of proof is upon the party seek-

ing to charge him, to show that the promise was made with full knowledge of his rights. *Spurlock* v. *Union Bank*, 4 Humph. 336.

It is not alleged in the bill, nor shown by any proof, that the promise to pay, charged by the complainant to have been made by Buttorff after the confirmation of the sale, was based upon any new consideration passing between the parties. The complainant does not claim that it was founded upon his consent to such confirmation. He says he would have objected to the confirmation, but was assured by the counsel of defendants that the money would be paid him. There is no evidence of any such assurance, nor of any authority from the defendants to the counsel to make it. The defendant Buttorff's subsequent promise to pay must, therefore, stand upon his liability as indorser or assignor of the notes assigned to complainant, and is not binding, for the reason just given.

The third ground relied on, — namely, the act of the defendant in entering into the agreement of March 14, 1874, — although it probably grew out of the same ignorance of his rights, presents graver difficulties; for an act done to the prejudice of another, although ignorantly, may be obligatory by way of estoppel. If, indeed, the defendant had been induced to think himself liable for the debt by any thing said or done by the complainant as a lawyer, the court would not allow him to be prejudiced by an act done under the misapprehension. The defendant so states the fact in his answer; but the answer, not being in this regard responsive to the bill, is not evidence for the defendant, and he has not chosen to be a witness. It is true, the complainant, both in his bill and in his deposition, seems to take for granted the continuous liability of the defendant to him for the debt, which, in the absence of any evidence of such liability, is strongly persuasive of the truth of the answer on this point. In the absence of any thing conclusive in this regard, the rights of the parties must be determined upon other grounds.

The bill is based upon the hypothesis that all the proceedings in the Supreme Court touching the sale of the land, including the decree of sale in the consolidated causes, were taken by the defendant Buttorff without the consent of the complainant. The evidence does not sustain this charge, but supports the denial of the answer. Buttorff was no party to these causes, nor to the consent decree therein entered. The decree in the joint suit of the other defendants against Buttorff, rendered on the same day, by which it was agreed that the costs should be paid out of the proceeds of the sale in the consolidated causes, fairly implies that it was understood that the sale should be made under the decree in those causes. It is not alleged in the bill, nor does it otherwise appear, that complainant was not a party to this understanding. It is clear he was not prejudiced by it. The rights of the parties were settled by the decree of this court, affirmed in the Supreme Court, in the case of the other defendants against Buttorff, that the land should be sold on time, and the proceeds " divided among all." I understand these words of the bill to concede, what the answer expressly asserts, that the decree in that case determined that Buttorff was not entitled to priority of satisfaction out of the proceeds of sale, but only to equality of rights. This decree itself is not before me, and I can only act upon the admissions of the pleadings. In this view, the probability is that the terms of sale in the consolidated cause were the same as the terms of sale in the decree of this court in the other cause, and the testimony of the only witness introduced by the defendants is persuasive of the same fact. It was, therefore, a matter of no consequence under which decree the sale was made. The rights of the complainant were precisely the same under the sale when made, — namely, to receive the proceeds of sale to which Buttorff would be entitled. The record discloses the fact that, pending the litigation, the debtor, Parrish, received a discharge in bankruptcy, and all that any of the

creditors could ever hope to realize was their proportion of the proceeds of sale of the property on which they all had equal liens.

The property was sold in conformity with the decree of sale, and was bid in for the defendants, under an agreement entered into after the decree, and title vested in them in the proportion of their respective debts. The defendants having had, at the date of this agreement, as they admit in their answers, knowledge of complainant's ownership of the Buttorff debt, could do nothing in prejudice of his rights. If the agreement was made without his consent, he had the undoubted right to repudiate it, or to ratify it and accept the benefit taken by Buttorff under it. He could not, of course, repudiate in part and ratify in part. He must sanction what was done *in toto*, and accept its fruit, or renounce altogether.

These being his rights, if he chose to ratify, he stepped in Buttorff's shoes, taking his undivided interest in the land in the proportion of his debt, with the right of resale, and to receive his proportion of the proceeds out of the first moneys realized. The defendants agree that he is entitled to this relief, and he may now elect to take it. In that event, he will be entitled to his proportion of rents, and must bear his proportion of the burden of taxes and costs. Proper accounts will be ordered, and the land will be ordered to be sold, free from redemption, upon the terms of one-fourth cash, and the residue in one, two, and three years, with interest.

If the complainant chose to repudiate the transaction, he was merely restored to all the rights which belonged to him as the owner of the Buttorff debt. Those rights were, to have a sale of the property on six months' credit, free from redemption, for the benefit of himself and the defendants other than Buttorff, in the proportion of their respective debts, less the costs of sale. The difference in the result between repudiation and ratification would have been sim-

ply the loss in the priority of satisfaction, to the extent of his interest, out of the first proceeds of sale, conceded to Buttorff by the verbal agreement with the other defendants. The bill is not filed with a view to this relief, but I presume the defendants would concede it; and, as the court could allow an amendment of the bill to this effect, the complainant may now elect to take this relief. In that event, he would be entitled to a share of the rents in proportion to his debt, and must bear the burden of taxes and costs, etc., in like proportion.

It is urged by the defendants that the failure of the complainant to except to the confirmation of the report of sale, or to enjoin the confirmation by a supplemental bill, was a ratification of the act of Buttorff. And so I should think, if the evidence had shown that the complainant was aware of the agreement of the parties in time before the confirmation, or if the proof had not shown that the complainant was induced to waive his objection at the time by representations which, although clearly not amounting to a valid promise to pay his debt, tended to mislead him as to the agreement between Buttorff and the other defendants. I am satisfied that the defendants never, at any time, contemplated a payment of Buttorff's entire debt out of the proceeds of sale, unless, indeed, the property brought enough, upon a resale, to pay all the debts in full, and that no assurance to this effect was ever given to complainant by any person. What was said was, what the agreement provides, that Buttorff was to receive his proportion of the debt out of the first proceeds of a sale, and the complainant misunderstood the statements to mean that he was to be fully paid.

The complainant may have thought, in filing his bill, although the idea is not clearly expressed, that he was entitled to hold the defendants liable as purchasers of the property; and, as they had nominally bid the full amount of their debts, he could make them pay his share in full. If, as alleged in the bill, there had been a fraudulent combi-

nation between the defendants to deprive the complainant of his rights, and to aid Buttorff, through his nominal ownership of the debt, to get title to an interest in property worth largely more than the debt, there might have been some plausibility in the shape of the relief suggested. For, the defendant might elect to take his money, instead of the more valuable property. But there is not the slightest pretence for any such view of the conduct of the parties. Buttorff's object was to make as much as he could out of the property by the arrangement entered into, believing that he was personally bound to the complainant for the debt, and that the property would not bring the amount of all the debts. The report of the sale, and the decree confirming it, show that there was, in fact, no bidding by any of the parties, as purchasers, between themselves, in the sense that either was liable to the other for the money bid. Clearly, therefore, the complainant could, by subrogation to Buttorff's shoes, acquire no right to demand money which Buttorff could not demand. And, as we have seen, he could not affirm the act so far as it was a sale, and repudiate it in other respects. Besides, he is no party to the consolidated causes under which the decree was made, nor is Buttorff. Except by agreement, every thing in that suit would be *res inter alios acta*, so far as he and Buttorff were concerned. I agree that the decree in the cause of the other defendants against Buttorff fairly implies that the sale in the consolidated causes was to be for the benefit of all the defendants. Whether complainant was a party to that agreement or not, he was entitled to whatever benefit Buttorff might take under it, and this he may take by electing to ratify the sale. But, without adopting the agreement, he has nothing to do with these causes, and the sale under the consolidated and consent decree. He can only fall back upon the decree in the cause to which Buttorff was a party, and sell the property under that decree; or, rather, by virtue of the rights acquired for his benefit under that decree.

And that is, to a sale of the property on six months' time, free from redemption, and to receive a share of the pro- ceeds proportioned to his debt, and *pari passu* with the other creditors.

The bill does not show, nor does the proof, that com- plainant was injured by the course pursued by Buttorff. On the contrary, it left the property still subject to his decree, with the valuable concession that his share should be first paid out of the proceeds of sale. The defendants show that they have been willing all the time to allow this, and there is nothing to show that, if he had demanded his strict legal rights, namely, a resale on six months' time, free from redemption, but without any right to the funds first realized, the defendants would not have conceded them. He made no such demand before his bill, nor by it; but the property still exists, and complainant may now demand his legal rights. Under these circumstances, and in view of the fact that both complainant and Buttorff seem to have labored under the impression that Buttorff was personally liable for complainant's debt, — a mistake which has ob- viously led to all these complications, — I do not think that Buttorff has estopped himself by any thing he has done from setting up the truth of the case.

I am, therefore, of opinion that the complainant may now elect to ratify or repudiate the agreement and acts of But- torff, and take a decree in accordance with the election as hereinbefore prescribed. And he may make his election without prejudice to any of his rights upon appeal, to be so stated in the face of the decree. If he declines to make any election, I have no option except to dismiss his bill, with costs.

The complainant claims by his bill to recover against all the defendants his counsel-fees in the Buttorff case, and to subject to the satisfaction of such recovery the interests of the defendants in the land. The claim to fees, however, rests only on the written agreement by which Buttorff trans-

ferred to him the Parrish notes; and, consequently, I cannot see that he has any demand, either legal or equitable, for these fees against any of the defendants except Buttorff, or any lien on the property in controversy. Buttorff concedes his liability according to the contract, but insists that his liability is limited to the professional services in the Chancery Court. The language of the contract is equivocal, and leaves it doubtful whether the closing words, "prosecuting said suit in said Chancery Court," were intended merely to describe the suit, or limit the charge. I am inclined to construe them as merely describing the case. But I am relieved from the necessity of coming to a positive conclusion by the fact, which appears on the face of the bill, that the appeal in the Buttorff case was merely taken for delay. The litigation in that suit virtually ended in the Chancery Court, and the charge for professional services should be confined to that court. If the complainant elects to take a decree on the other part of the case, he may take a personal decree against Buttorff for this fee. If, however, he declines to elect, this part of the bill may be dismissed also.